Filed 10/28/13  P. v. Alvarez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PEDRO ALVAREZ ALVAREZ,<br><br>Defendant and Appellant. | F065502<br><br>(Stanislaus Super. Ct. No. 1439161)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Cornell, Acting P.J., Poochigian, J. and Detjen, J.

**FACTS**

**Background**

Defendant was charged with battery on a peace officer (count I – Pen. Code,[1] § 243, subd. (c)(2)); three counts of assault with a semiautomatic weapon (counts II, III and IV - § 245, subd. (b)); negligent discharge of a firearm (count V - § 246.3, subd. (a)); and three counts of felony resisting arrest (counts VI, VII, and VIII - § 69). As to the assault with a semiautomatic weapon counts, it was alleged (1) that defendant personally used a firearm (§ 12022.5, subd. (a)); (2) that defendant had suffered a prior serious felony conviction as described in section 667, subdivision (a). As to all counts, it was alleged defendant suffered a prior serious felony conviction as described in section 667, subdivision (d).

The jury returned verdicts of guilty as to the counts of assault with a semiautomatic weapon and negligent discharge of a firearm (counts II, III, IV, and V). The jury found the firearm use allegations on counts II, III and IV to be true. (§ 12022.5, subd. (a).) The jury returned verdicts of not guilty as to the battery on a peace officer and felony resisting arrest counts (counts I, VI, VII and VIII). The jury also returned verdicts of not guilty as to the lesser included offenses of those counts, with one exception. As to resisting a peace officer (§ 148, subd. (a)(1)), a lesser included offense of count VII (§ 69), the jury was unable to reach a verdict and a mistrial was declared.

The court found the prior convictions under section 667, subdivisions (a) and (d) to be true. The court sentenced defendant to a total prison term of 22 years 4 months. On count II, defendant was sentenced to the midterm of six years, doubled pursuant to section 667, subdivision (d), plus four years on the firearm use enhancement. The same

---

[1] All undesignated statutory references are to the Penal Code unless otherwise stated.

sentence was rendered on counts III and IV. On count V, defendant was sentenced to one year four months, calculated as follows: one-third of the midterm of 16 months, doubled pursuant to section 667, subdivision (d).

**Trial Evidence**

*Testimony of Michael Washington*

Michael Washington testified at trial. At 5:30 p.m. on December 2, 2011, he was at Kano's Smoke Shop. When he entered the store, there were three to four other people in the store. A clerk was behind the counter, speaking with defendant about knives on a shelf. Washington saw both the clerk and defendant "getting real irritable." Defendant asked for a "certain amount" of "Zig-Zags." Defendant was speaking in broken English and was becoming "irritable" because the clerk did not understand him.

"Someone" walked out of the store and defendant "got nervous and pulled out a pistol." He had retrieved the pistol from his waist. Defendant pulled the rack of the gun back (i.e., he "cock[ed] it back.") The person who was leaving the store began to run.

Defendant told everyone not to move or he would kill them or shoot them. The gun was pointed "[a]t all of us that was [*sic*] inside the shop," which included the clerk, Washington and another male customer. Defendant turned "his attention to the clerk and said something about money or something." Seeing his chance to escape, Washington ran out the door to a shop across the street.

The prosecutor asked Washington, "And before you left the store had the defendant shot the gun?" Washington responded, "I have no clue. I was outside of the shop, I guess, when all of that happened."

Washington called 9-1-1. The police arrived "pretty quickly" thereafter.

*Testimony of Officer Joseph Pimentel*

Officer Joseph Pimentel heard a radio call and responded to Kano's Smoke Shop. As Officer Pimentel approached the building, he came near to Officer John Moss. He did

3.

not have time to speak to Officer Moss. Defendant came through the doorway[2] holding a plastic bag. He placed the bag onto a chair to his right. Officer Pimentel told defendant to "put his hands up." Officer Pimentel testified: "After placing the bag on the chair, [defendant] slowly stood straight up and brought his hand up to about chest level and placed his palms out towards me."

The officers ordered defendant onto the ground, and he complied. Another officer, Officer Castro, helped Officer Pimentel handcuff defendant. No gun had been recovered yet. Officer Pimentel began to roll defendant onto his side to search him. Defendant then brought his knees up and forcefully rolled all of his weight onto his back, pushing Officer Pimentel back. Officer Pimentel laid on top of him to keep control of defendant. Officer Pimentel tried to roll defendant onto his stomach, but "he wouldn't go." Officer Pimentel drew his Taser and applied a drive stun to defendant. The first application had no effect, so Officer Pimentel moved the Taser up and applied it to defendant's upper chest area. This second application immobilized defendant.

Subsequently, Officer Moss asked defendant where the gun was, and "got no answer." Officer Moss bent down in front of defendant, reached to the front of defendant and stood up holding a two-tone semiautomatic pistol.

### *Testimony of Officer John Moss*

Officer John Moss received a call that there had been an armed robbery at Kano's Smoke Shop, which was located "[c]lose to the DMV." He pulled into the parking lot of a fast food restaurant "next to" the smoke shop. !

Officer Moss was the first officer on the scene. As he was walking up to the shop, defendant came out, standing in the "threshold of the doorway." Defendant had a plastic bag in his arms with two large knives protruding. Officer Moss told him to drop the bag

---

[2] Presumably this testimony refers to the doorway of Kano's Smoke Shop.

and get on the ground. Defendant complied with both commands. The bag contained two large swords, money and packaging for tobacco or cigarettes.**³**

Officer Moss had been told "there were shots fired in the store." Officer Moss, accompanied by other police officers, entered the store. Officer Moss could smell gun powder inside the store, and there was a bullet hole in the ceiling. Nobody was inside the store, and there was no cash in the cash register. Officer Moss did not find a firearm in the store.

Officer Moss exited the store and approached defendant. He lifted defendant's sweater and found a pistol in his waistband. A shell casing was stuck in the slide of the firearm. The firearm was a semiautomatic weapon.

*Testimony of other officers*

Officer Martin Lemus testified to largely the same facts as Officer Moss. Officer Shane Castro testified regarding the chain of custody of the firearm found on defendant's person. Officer Dwight Miller testified that he interviewed Michael Washington and Lounny Manivong. Lounny Manivong said he was the clerk of the store.

## DISCUSSION

### SUBSTANTIAL EVIDENCE SUPPORTED THE JURY'S VERDICT ON COUNT V, NEGLIGENT DISCHARGE OF A FIREARM

Defendant contends there was a lack of substantial evidence to support his conviction for violating section 246.3, subdivision (a). We disagree.

Section 246.3, subdivision (a) punishes "any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person .…" (§ 246.3, subd. (a).) "[T]he elements of section 246.3 (a) are: '(1) the

---

**³** As to the packaging for tobacco or cigarettes, Officer Moss testified, "… *I think* there was packaging for tobacco or cigarettes." (Italics added.) Later, Officer Moss testified regarding People's exhibit 5, which depicted tobacco wrapping (i.e., Zig-Zags) in the bag.

defendant unlawfully discharged a firearm; (2) the defendant did so intentionally; (3) the defendant did so in a grossly negligent manner which could result in the injury or death of a person.'[Citations.]" (*People v. Ramirez* (2009) 45 Cal.4th 980, 986 (*Ramirez*).)

Defendant contends there was a lack of substantial evidence adduced at trial as to the third element, which is referred to as the "risk element." (E.g., *Ramirez*, *supra*, 45 Cal.4th at p. 987.)

Important here, the California Supreme Court explained the risk element of section 246.3, subdivision (a) in *Ramirez*, *supra*, 45 Cal.4th 980:

> "The risk element of section 246.3 was included to ensure that the statute would not apply to hunting or target practice in remote locations .… *The risk element requires the likely presence of people in the area, not the actual presence of a specific person.* Requiring the prosecution to prove a particular person was present is impractical and was never intended." (*Id.* at p. 987, italics added.)

Defendant contends that no evidence showed "the likely presence of people in the vicinity when appellant fired the gun." Defendant points to the fact that "it cannot be determined when the clerk and customer left the store." This argument falls on the wrong side of the distinction drawn by the Supreme Court in *Ramirez*. "The risk element requires the likely presence of people in the area, not the actual presence of a specific person." (*Ramirez*, *supra*, 45 Cal.4th at p. 987.) Defendant's fixation on the lack of evidence regarding the location of two specific people (i.e., the clerk and the male customer), is misplaced.[4] In enacting section 246.3, "the Legislature intended no

---

[4] While the prosecution was not obligated to prove it, there *was* substantial evidence to support an inference that the clerk and the male customer were "likely" "in the area" when the shot was fired. Washington testified that when defendant pointed the gun at him, there were at least three individuals in the store besides defendant: Washington, the clerk and another male customer. Then Washington ran and called 9-1-1 once he had gotten to a store across the street. Police arrived "pretty quick." Officer Moss, the first officer on the scene, was less than one mile away when he received the call. Officer Moss walked up to the store, and defendant was standing in the doorway of

requirement that an actual person be in proximity to the grossly negligent shooting.…" (*Ramirez*, *supra*, 45 Cal.4th at pp. 986-987.)  The risk element was included to ensure that the statute would not apply to hunting or target practice in remote locations.  (*Id.* at p. 987.)  Thus, the relevant body of evidence is that which speaks to the public nature of the smoke shop and its surroundings.  The evidence that the smoke shop was open to customers at the time of the shooting, was located close to the DMV, and "next to" a fast food restaurant, all suggest the *likely* presence of people in the area.  This is all the risk element requires.  (*Id.* at pp. 986-987.)

Defendant also argues that he "fired a gun into a ceiling where there was no likelihood of the bullet striking a person."  Just because defendant fired the gun into a ceiling does not mean there was no likelihood of the bullet striking someone. Anticipating this response, defendant argues that there was "no evidence regarding the composition of the ceiling, such that one could reasonably conclude there was a risk of ricochet which might endanger a person."  This argument misses the mark.  Discharging firearms where people are likely present is dangerous precisely because there are so many variables affecting whether someone will be injured or killed.  (Cf. *Ramirez*, *supra*, 45 Cal.4th at p. 990 ["No one knows where shots fired recklessly into the air are likely to land."].)  Evidence regarding the composition of physical obstacles in the trajectory path of the bullet goes to whether any particular individual was actually endangered.  But that is not what the prosecution was required to prove here.  (*Id.* at p. 987.)  All that must be

_____

the shop.  By that point, Officer Moss had already been told that a shot had been fired in the store.  Thus there was substantial evidence that the shot had been fired within the time it took for Washington to run across the street, call 9-1-1, and the police to arrive "quick[ly]" from less than one mile away.  This does not conclusively establish the presence of the clerk or the male customer in the store when the shot was fired, but it does support an inference that one or both of them were "likely" present "in the area." All section 246.3 requires is the *likely* presence of people in the area of the shot fired, not the actual presence of any specific individuals.  (*Ramirez*, *supra*, 45 Cal.4th at p. 987.)

proven is that defendant intentionally and unlawfully discharged a firearm in an area where people were likely present. (*Id.* at pp. 986-987.) There was substantial evidence supporting the jury's conclusion that the prosecution met this burden.

## NO SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S RULING THAT SECTION 654 DID NOT PRECLUDE PUNISHMENT ON COUNT V

Defendant also contends the sentencing court's finding that section 654 did not apply to the sentence on count V was not supported by substantial evidence. We agree.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.…" (§ 654, subd. (a).) Pursuant to decisional law, section 654 also applies "where a course of conduct violate[s] more than one statute .…" (*Neal v. State* (1960) 55 Cal.2d 11, 19 overruled in part by *People v. Correa* (2012) 54 Cal.4th 331.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Correa*, *supra*, 54 Cal.4th at p. 336, citing *Neal v. State*, *supra*, 55 Cal.2d at p. 19.)

"As a general rule, the sentencing court determines the defendant's 'intent and objective' under section 654." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 268.) That determination must be sustained on appeal if supported by substantial evidence. (See *People v. Osband* (1996) 13 Cal.4th 622, 730-731; *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378.) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

8.

The sentencing court ruled on the section 654 issue as follows:

"However, on Count V, I do not think that its 654 [*sic*] because the assault with a firearm, semi-automatic firearm, was completed when he pointed the gun at all three individuals, but then he took the additional step of firing it, which I think increased the danger for the occupants and was done not to further the robbery that he was attempting to commit, but in order to terrorize the individuals."

Thus, the trial court found that defendant did not fire the gun to further the robbery, but rather to terrorize the individuals in the store. We conclude that this finding is not supported by substantial evidence.

To permit multiple punishments, " 'there *must* be evidence to support a finding the defendant formed a separate intent and objective for *each* offense for which he was sentenced. [Citation.]' [Citation.]" (*People v. Coleman* (1989) 48 Cal.3d 112, 162, italics added.) While there was some evidence regarding defendant's intent in assaulting the victims, there was no substantial evidence that he formed a separate intent and objective in firing the gun. It is entirely possible that, as the sentencing court concluded, defendant fired the gun to terrorize the victims rather than to further the robbery. But there was no evidence suggesting this was the case.[5] Thus, it was equally possible that defendant fired the gun and assaulted the victims pursuant to the same objective: to further the robbery. Because there is no substantial evidence supporting the finding that defendant formed a separate intent and objective in discharging the firearm, that finding cannot survive on appeal.

The People contend "the assaults on the three occupants in the smoke shop had been completed before [defendant] fired the gun.…" It is correct that the evidence supports, or even compels, that inference. But that fact does not compel the conclusion

---

[5] The only witness, Washington, left after the assault and before the firing of the gun.

9.

that section 654 does not apply because "the fact that one crime is completed before the other is commenced … does not *itself* make the criminal acts divisible. [Citations.]" (*People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 817, original italics.)

The People also claim "the court was correct to observe that the assaults were finished so the gunfire was not simply the means to accomplish those crimes.…" We agree that the gunfire was not a means to accomplishing the assaults. But, the more important issue is whether the gunfire and assaults were both done in furtherance of the *robbery* or any other common objective. Here, there is no evidence the firing of the gun and the assaults were done pursuant to separate intents and objectives. This dispositive conclusion is not altered by the fact that there was substantial evidence the firing of the gun was not a means to accomplishing the assaults.

## DEFENDANT IS ENTITLED TO ONE ADDITIONAL DAY OF CREDIT

Defendant contends he is entitled to an additional day of presentence custody credit and the People concede. We agree and order modification of the judgment to reflect 223 days of credit.

## DEFENDANT WAIVED HIS CHALLENGE TO THE FEES IMPOSED AT SENTENCING

Defendant claims the court erred in imposing fees under sections 987.8 and 1203.1b. Defendant waived his right to challenge the fees by failing to object in the sentencing court. (See, generally, *People v. Snow* (2013) 219 Cal.App.4th 1148; *People v. Aguilar* (2013) 219 Cal.App.4th 1094.)

## DISPOSITION

The judgment is modified to reflect: (1) a stay of the execution of the sentence on count V; and (2) that defendant is entitled to 223 days of presentence custody credit. As modified, the judgment is affirmed. The matter is remanded to the trial court to amend the abstract of judgment accordingly, and to transmit certified copies of the amended abstract to all appropriate parties and entities.

10.