Filed 5/27/14  P. v. Avalos CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C073626 |
| Plaintiff and Respondent, | (Super. Ct. No. TF036374A) |
| v. | |
| FREDDY AVALOS, | |
| Defendant and Appellant. | |

A jury found defendant Freddy Avalos guilty of assault with a firearm and shooting at an occupied vehicle and found he used and intentionally and personally discharged a firearm, inflicting great bodily injury, but acquitted him of attempted premeditated murder and attempted manslaughter.  (Pen. Code, §§ 245, subd. (a)(2), 246, 664/187, subd. (a), 664/192, subd. (a), 12022.5, subd. (a), 12022.53, subd. (d), 12022.7,

1

subd. (a).)[1]  The trial court sentenced him to a total prison term of 30 years to life, and he timely appealed.

On appeal, defendant contends the trial court erred in failing to instruct the jury on a lesser offense, improperly responded to the jury's request for clarification of intent, and imposed a cruel and unusual sentence.  Disagreeing, we shall affirm.

## FACTS

On February 18, 2011, in a fit of road rage, defendant fired a gun multiple times at a truck that had hit and disabled his vehicle, shooting the driver as well as the truck.

Defendant told Detective Timothy Bauer that he had been driving a car involved in a crash with a pickup truck.  The truck's driver sped through a red light, hit defendant's car, and then left the scene.  Defendant's car was inoperable, but he told his two friends to chase the truck because it "seemed like [the truck's driver] was trying to leave the scene."  But, after stopping briefly down the street, the truck came back toward defendant and then "everything just went crazy."  He knew there had been gunshots but denied owning a gun, though he had fired one at a shooting range a couple of weeks earlier--a .45-caliber pistol like the one recovered from the crime scene.  Eventually, defendant admitted to Bauer that he had been carrying the gun in his car.  He was angry because he was a hard-working man, he needed his car for commuting to work, and the truck driver (who was probably drunk) was trying to get away, so he tried to shoot the truck's tires out as it passed.  He then ran "like hell, just trying to get rid of [the gun]."

The People's additional evidence was consistent, although the victim claimed he had not run the red light.  The victim--who in fact had been intoxicated--was shot once into the back left shoulder, with the bullet lodging in the middle of his back, where it

_____

[1]  Undesignated statutory references are to the Penal Code.

remained, causing continuing pain. At least two of defendant's bullets hit the victim's truck.

Defendant's trial testimony was broadly consistent with his statement to Detective Bauer, in that he was frustrated because a drunk driver had "mess[ed] up [his] life," and when the truck came back past him he shot "towards the direction that the truck was moving in." However, he testified there were five people in his car, not three, and he fired four rounds, not three, and he found and threw away one spent casing the police did not find. Defendant conceded that he was in no danger when the victim drove past him.

## DISCUSSION

### I

### *Lesser Included Offense*

Defendant contends the trial court erred in failing to instruct on grossly negligent discharge of a firearm (§ 246.3), as a lesser offense to shooting at an occupied vehicle (*id.*, § 246). We agree the former is included within the latter. (*People v. Ramirez* (2009) 45 Cal.4th 980, 985-990 (*Ramirez*); *People v. Overman* (2005) 126 Cal.App.4th 1344, 1360-1362 (*Overman*).) However, for the reasons we outline *post*, we disagree with defendant's claim.

As summarized by our Supreme Court:

> "Both offenses require that the defendant willfully fire a gun. Although the mens rea requirements are somewhat differently described, both are general intent crimes. The high probability of human death or personal injury in section 246 is similar to, although greater than, the formulation of likelihood in section 246.3(a), which requires that injury or death 'could result.' The only other difference between the two, and the basis for the more serious treatment of a section 246 offense, is that the greater offense requires that an inhabited dwelling or other specified object be within the defendant's firing range." (*Ramirez*, *supra*, 45 Cal.4th at p. 990.)

3

Here, the trial court correctly observed that it was required to instruct on the lesser offense if (and only if) there were substantial evidence from which a rational jury could find the lesser offense true, but not also find the greater offense true. (See *People v. Breverman* (1998) 19 Cal.4th 142, 162.)

Defendant made clear in his trial testimony that he intended to shoot toward the truck, and he told Detective Bauer that he was trying to shoot the truck's tires. Both versions show he was *intentionally aiming at the truck*, which he knew was occupied. Bullets actually hit the truck and its driver. On this evidence, no rational jury could find defendant guilty *only* of the lesser offense of grossly negligent discharge of a firearm, as defined by section 246.3.

Defendant posits that a jury could rationally find he acted without the malice required for a section 246 charge, and emphasizes that the jury acquitted him of attempted murder and attempted manslaughter (a lesser offense based on sudden quarrel or heat of passion).

An acquittal on one or more counts has no relevance when assessing liability as to counts resulting in conviction. (*People v. Lewis* (2001) 25 Cal.4th 610, 655-656; *People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656-1657; see § 954 ["An acquittal of one or more counts shall not be deemed an acquittal of any other count"].) Further, the requirements for proving "malice" differ between section 246 and attempted murder.

> "Section 246 is a general intent crime. [Citation.] As such, the term 'maliciously' in section 246 is defined by Penal Code section 7, item 4, as 'a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.' The court correctly instructed the jury on this point.

> "Defendant cites *People v. Salcido* (1968) 263 Cal.App.2d 1, 6, for the proposition that the type of malice to which section 246 refers requires a demonstration that the act was without lawful 'justification, excuse or mitigating circumstance.' *Salcido* is inapplicable to a charge of discharging a firearm at an

4

inhabited dwelling. *Salcido* is a murder case, and as explained by *People v. Sekona* (1994) 27 Cal.App.4th 443, 450-457, the malice required for a conviction of a general intent crime (there, mayhem) was different from the 'malice aforethought' required for murder." (*People v. Watie* (2002) 100 Cal.App.4th 866, 879.)

Here, the trial court instructed the jury (CALCRIM No. 600) that in order for it to find defendant guilty of attempted murder, defendant had to have "intended to kill" the victim. The question of defendant's intent to kill is separate and distinct from his intent to act wrongfully--namely to shoot at the victim's truck. Thus, the acquittal on the attempted murder count (and attendant lesser count of attempted manslaughter) is not indicative of an error contributing to conviction on the section 246 count. Both decisions appear logical despite their different conclusions, based on our review of the evidence heard by the jury in this particular case.

II

*Instructions on Intent*

Defendant next contends the trial court's answer to a jury question may have confused the jury about the mental state required by section 246. We are not persuaded.

The jury asked: "We require the definition of the word 'Intent' as it is written under the Definition of Maliciously." The trial court, after consulting with counsel, replied: "Please refer to instruction 965 (p. 31) and instruction 252 (p. 12) and any other instruction you find appropriate on this issue."

Instruction No. 965 defined the crime of shooting at an occupied vehicle, and defense counsel agreed that the jury should be referred back to that instruction. Instruction No. 252 defined general and specific intent, and specified that shooting at an occupied vehicle was a general intent crime, merely requiring defendant "intentionally [did] a prohibited act" as defined in the substantive crime instruction.

5

A trial court has great latitude in determining how to respond to a jury question about instructions, and may choose to refer the jury back to the instructions already given, if they are adequate. (See § 1138; *People v. Moore* (1996) 44 Cal.App.4th 1323, 1331.) In a capital case where the jury asked for clarification of malice, our Supreme Court upheld the trial court's decision to reread the relevant instructions already given. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212-1213.) Similarly, in this case, the trial court referred the jury back to intent instructions, as well as any other instructions the jury thought relevant to its concerns. This approach is not erroneous in and of itself. The jury did not ask any additional questions on this topic.

Defendant contends the trial court's answer must have exacerbated whatever concern the jury originally had, but does not directly challenge any of the instructions given. Defendant asserts, however, that shooting at an occupied vehicle is a "hybrid" crime that requires neither general nor specific intent, but requires only that defendant act "maliciously," which he asserts "requires its own [] peculiar mental status." Although we agree that section 246, as applicable to this case, required a mental state finding that defendant maliciously and willfully discharged a firearm at a motor vehicle (§ 246), it does not require that the actor intended some further consequence or objective, and therefore it is properly deemed to be a general intent crime. (See *Ramirez*, *supra*, 45 Cal.4th at pp. 985, fn. 6, 990; *Overman, supra,* 126 Cal.App.4th at pp. 1356, 1361 ["No specific intent to strike the target, kill or injure persons, or achieve any other result beyond shooting at or in the general vicinity or range of the target is required"].)

## III

### *Cruel Punishment*

Defendant contends his sentence of 30 years to life in prison constitutes cruel or unusual punishment, blending claims based on analogous California Constitution and United States Constitution provisions. We deem the contention forfeited and decline to find defendant's trial counsel provided ineffective assistance by failing to preserve the

claim, because we concluded on the merits that his sentence was not constitutionally infirm.

Because defendant failed to challenge his sentence on this basis in the trial court, he has forfeited his challenge on appeal. (See *People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) However, because defendant claims ineffective assistance of counsel caused his failure to previously argue his sentence was cruel, we reach the merits of his claim.

"It is a rare case that violates the prohibition against cruel and/or unusual punishment." (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1072.) Although we acknowledge that defendant's punishment was significant, this is not such a "rare" case. (See *People v. Martinez* (1999) 76 Cal.App.4th 489, 493-498 [affirming 30 year-to-life sentence for attempted murder with a firearm]; see also *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1213, 1217-1221 [affirming life without parole plus one-year sentence for 18-year-old defendant who stabbed victim during drug robbery, rejecting cruel punishment claim].) The sentence imposed in this case illustrates the Legislature's desire to severely punish those convicted of shooting at occupied vehicles, assaulting people with firearms, and intentionally discharging firearms causing great bodily injury. Applying that legislative determination to the facts of this case does not "shock[] the conscience [or] offend[] fundamental notions of human dignity" (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358) such that we are inclined to question it. Defendant's sentence of 30 years to life is not constitutionally infirm.

Nor is defendant's reliance on *People v. Dillon* (1983) 34 Cal.3d 441 persuasive. In *Dillon*, a 17-year-old planned to raid a marijuana farm with some armed friends, but they made little progress for two hours. When one of the boys accidentally discharged his gun and the farmer approached with a gun, Dillon rapidly fired nine shots, killing the farmer. (*Id.* at pp. 451-452, 482-483.) As characterized by our Supreme Court, Dillon was "unusually immature" and the shooting "was a response to a suddenly developing situation that defendant perceived as putting his life in immediate danger." (*Id.* at

7

p. 488.)  Dillon was convicted of felony murder, but our Supreme Court found the resulting life sentence cruel or unusual punishment under the California Constitution and modified the judgment by reducing the degree of murder to second degree.  (*Id.* at p. 489.)  In contrast, in this case there is no evidence defendant's intellectual, social, or emotional development was impaired, or that he panicked or feared the truck driver would hurt him.  Instead, he admitted that he fired in anger at having been the victim of a road accident.

Because defendant's claim of cruel punishment fails on the merits, his trial counsel was not ineffective in failing to raise it.

## DISPOSITION

The judgment is affirmed.


                                                        DUARTE            , J.



We concur:



        HULL            , Acting P. J.



        MAURO          , J.

8