[No. S156775. Feb. 26, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSIE JOSE RAMIREZ, Defendant and Appellant.

**COUNSEL**

Joseph C. Shipp, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Janet E. Neely, Lloyd G. Carter, Louis M. Vasquez and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CORRIGAN, J.**—Here we hold that grossly negligent discharge of a firearm (Pen. Code, § 246.3, subd. (a))[1] is a necessarily included offense of discharge of a firearm at an inhabited dwelling (§ 246).[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Several Chowchilla police officers went to an apartment where a man was reportedly holding a gun to a woman's head. After the officers identified themselves and ordered the occupants to come out, Sergeant David Noblett knocked on the front window. Immediately, a shotgun was fired through the window. Noblett was not struck, but was knocked backwards by the blast and hit with glass. He took cover behind a car. Two to six more shots were fired from the window.

Defendant's wife Samantha briefly emerged carrying their five-year-old daughter, but returned to the apartment with the child. Two or three more shots were fired from the window; additional shots came from a rear window.

The officers again ordered the occupants to come out. Samantha did so. But after she set the child on the ground and told her to go to the officers, Samantha went back inside. Chief Jay Varney picked up the child and ran for cover.

After several more shots came from inside the apartment, Samantha again emerged, saying that defendant had put down his gun. Defendant then came out with his hands up. He said, "I am your man, the gun's on the couch."

Some shots fired during the standoff struck three neighboring apartments. In one, a slug pierced three walls. The bedroom where an eight-month-old girl was sleeping was in the pathway of the one-ounce projectile. In another apartment, shotgun pellets broke a window and hit the living room wall. An occupant sustained a minor injury.

---

[1] We will refer to this offense as "grossly negligent shooting" and to the statute as section 246.3(a). Further statutory references are to the Penal Code.

[2] We will refer to this offense as "shooting at an inhabited dwelling."

[3] Because we have limited review to a narrow legal question, we have condensed the factual background from the Court of Appeal's opinion. We accept the Court of Appeal's statement of facts unless a party calls the Court of Appeal's attention to any alleged omission or misstatement in a petition for rehearing. (Cal. Rules of Court, rule 8.500(c)(2).) Neither party here sought rehearing.

Defendant testified that, although he fired through the window after hearing the police officers knock and identify themselves, he was not shooting at them.

Defendant was convicted, inter alia, of 10 counts of grossly negligent shooting and three counts of shooting at an inhabited dwelling.[4] While the record would support a higher number, the Court of Appeal assumed that defendant fired only 10 shots, based on the fact that 10 spent shells were found in defendant's apartment. Here, the parties agree that three of the grossly negligent shooting counts and the three counts of shooting at an inhabited dwelling were based on the same acts.

Defendant was sentenced to 15 years to life, plus 30 years four months.

Defendant contends that three of the grossly negligent shooting convictions must be reversed because that crime is a lesser included offense of shooting at an inhabited dwelling. The Court of Appeal disagreed and affirmed the judgment. We reverse the judgment as to three of the grossly negligent shooting counts.

## II. DISCUSSION

■ In California, a single act or course of conduct can lead to convictions "of any number of the offenses charged." (§ 954; see *People v. Montoya* (2004) 33 Cal.4th 1031, 1034 [16 Cal.Rptr.3d 902, 94 P.3d 1098] (*Montoya*).) However, a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses. (*People v. Ortega* (1998) 19 Cal.4th 686, 692 [80 Cal.Rptr.2d 489, 968 P.2d 48]; *People v. Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].)

■ There are two tests for determining whether one offense is necessarily included in another: the "elements" test and the "accusatory pleading" test. (See generally *People v. Lopez* (1998) 19 Cal.4th 282, 288 [79 Cal.Rptr.2d

---

[4] Defendant was also convicted of the attempted murder of Officer Noblett (§§ 187, 664), assault with a firearm on Noblett (§ 245), being a felon in possession of a firearm (§ 12021, subd. (a)(1)), and child endangerment (§ 273a, subd. (a)).

The attempted murder and assault counts were also enhanced by personal use of a firearm (§ 12022.5, subd. (a)) and personal and intentional discharge of a firearm (§ 12022.53, subds. (b), (c)).

195, 965 P.2d 713].) We apply the "elements" test here because this case involves the conviction of multiple alternative *charged* offenses. "Courts should consider [both] the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes." (*People v. Reed* (2006) 38 Cal.4th 1224, 1231 [45 Cal.Rptr.3d 353, 137 P.3d 184].) Under the "elements" test, we look strictly to the statutory elements, not to the specific facts of a given case. (See, e.g., *People v. Murphy* (2007) 154 Cal.App.4th 979, 983–984 [64 Cal.Rptr.3d 926].) We inquire whether all the statutory elements of the lesser offense are included within those of the greater offense. In other words, if a crime cannot be committed without also committing a lesser offense, the latter is a necessarily included offense. (*Montoya, supra,* 33 Cal.4th at p. 1034; *Lopez, supra,* 19 Cal.4th at p. 288.)

Defendant contends that the crime of shooting at an inhabited dwelling (§ 246) cannot be committed without also committing a grossly negligent shooting (§ 246.3(a)). He is correct.

Section 246 provides in pertinent part: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house . . . is guilty of a felony . . . . [¶] As used in this section, 'inhabited' means currently being used for dwelling purposes, whether occupied or not."[5]

■ The elements of this offense are (1) acting willfully and maliciously, and (2) shooting at an inhabited house. (See Judicial Council of Cal. Crim. Jury Instns. (2008) CALCRIM No. 965.)[6]

Section 246.3(a) provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison."

---

[5] In full, section 246 provides: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year. [¶] As used in this section, 'inhabited' means currently being used for dwelling purposes, whether occupied or not."

[6] A violation of section 246 is a general intent crime. (*People v. Watie* (2002) 100 Cal.App.4th 866, 879 [124 Cal.Rptr.2d 258]; *People v. Jischke* (1996) 51 Cal.App.4th 552, 556 [59 Cal.Rptr.2d 269]; *People v. Froom* (1980) 108 Cal.App.3d 820, 826 [166 Cal.Rptr. 786].)

█ The parties agree that the elements of section 246.3(a) are: "(1) the defendant unlawfully discharged a firearm; (2) the defendant did so intentionally; (3) the defendant did so in a grossly negligent manner which could result in the injury or death of a person." (*People v. Alonzo* (1993) 13 Cal.App.4th 535, 538 [16 Cal.Rptr.2d 656] (*Alonzo*); see CALCRIM No. 970.)

This case created a conflict in the Courts of Appeal as to whether a violation of section 246 necessarily includes a violation of section 246.3(a). In *People v. Overman* (2005) 126 Cal.App.4th 1344 [24 Cal.Rptr.3d 798] (*Overman*), the Court of Appeal concluded that it does.

The *Overman* court reasoned that shooting at an inhabited building is grossly negligent because a significant risk of injury or death is foreseeable. (*Overman, supra,* 126 Cal.App.4th at p. 1362.) "Unlike section 246, section 246.3 does not require that an inhabited dwelling, occupied building, or any other specific target be in the defendant's firing range. But like section 246, section 246.3 involves discharge of a firearm under circumstances presenting a significant risk that personal injury or death will result. Section 246 proscribes discharging a firearm *at specific targets,* the act of which presumably presents a significant risk that personal injury or death will result. Section 246.3 proscribes discharging a firearm *in any grossly negligent manner* which presents a significant risk that personal injury or death will result. [¶] The only difference between sections 246 and 246.3 is that section 246 requires that a specific target (e.g., an inhabited dwelling or an occupied building) be in the defendant's firing range. Section [246.3] does not include this requirement. Both crimes, however, involve the intentional discharge of a firearm in a grossly negligent manner which presents a significant risk that personal injury or death will result." (*Ibid.*)

The Attorney General disagrees. He contends that section 246.3(a), unlike section 246, requires "the actual presence of a person in harm's way." He points to the following italicized language in section 246.3(a): "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner *which could result in injury or death to a person* is guilty of a public offense . . . ." (Italics added.)

This ambiguous phrase does not support the analytical leap the Attorney General attempts. As we explain in greater detail below, the legislative history confirms that the Legislature intended no requirement that an actual person be

in proximity to the grossly negligent shooting. The risk element of section 246.3 was included to ensure that the statute would not apply to hunting or target practice in remote locations, posing no foreseeable risk of human injury, based on abstract theories of criminal negligence. The risk element requires the likely presence of people in the area, not the actual presence of a specific person. Requiring the prosecution to prove a particular person was present is impractical and was never intended.

█ It is well settled that the proper goal of statutory construction "is to ascertain and effectuate legislative intent, giving the words of the statute their usual and ordinary meaning. When the statutory language is clear, we need go no further. If, however, the language supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, legislative history, the statutory scheme of which the statute is a part, contemporaneous administrative construction, and questions of public policy. (*In re Derrick B.* (2006) 39 Cal.4th 535, 539 [47 Cal.Rptr.3d 13, 139 P.3d 485].)" (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 783 [55 Cal.Rptr.3d 112, 152 P.3d 416].)

Although he urges the statutory language is clear, the Attorney General does not oppose defendant's request that we consider the legislative history of section 246.3(a). We have previously consulted that history in interpreting the statute. (See *People v. Robertson* (2004) 34 Cal.4th 156, 167 [17 Cal.Rptr.3d 604, 95 P.3d 872] (*Robertson*).)

The bill enacting section 246.3 was introduced in response to the phenomenon of celebratory gunfire. "Section 246.3 was enacted primarily to deter the dangerous practice that exists in some communities of discharging firearms into the air in celebration of festive occasions. (*People v. Clem* [(2000)] 78 Cal.App.4th [346], 350 [92 Cal.Rptr.2d 727]; *People v. Alonzo*[, *supra*,] 13 Cal.App.4th 535, 539–540 . . . [referring to the crime as constituting a reckless act that endangers the public directly and that also generates the risk of responsive gunfire].)" (*Robertson, supra*, 34 Cal.4th at p. 167.)

According to the City of Los Angeles, " 'The practice of discharging a firearm into the air is a dangerous and frequently fatal activity in some communities of Los Angeles. Every New Years and Fourth of July, as well as other times, brings new stories of innocent persons injured and killed by errant bullets. Falling bullets can obtain a velocity sufficient to penetrate

buildings and vehicles and more than sufficient to cause severe injury or death, often at a considerable distance from the point of firing.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 3066 (1987–1988 Reg. Sess.) June 10, 1988.)

As originally introduced, the bill provided: "Except as specifically authorized by law, any person who willfully discharges a firearm in any incorporated city, or while in any public place, or in any prohibited area of an unincorporated territory, as defined in Section 12031, is guilty of a felony." (Assem. Bill No. 3066 (1987–1988 Reg. Sess.) Feb. 8, 1988, § 1.)

The bill was first amended to restrict its reach to certain cities and to shootings that occurred "under circumstances or conditions likely to injure or kill another person." The fact that a shooting "occur[red] in the presence of others" was to be "a factor to consider" in determining the likelihood of injury to another person.[7]

The Attorney General agrees with defendant that this amendment and later related amendments were "spurred by gun and defense advocates who were concerned that the statute might ensnare hunters or citizens engaged in target practice." "The problem with the bill in its current form is that it could ostensibly be construed to make felons out of citizens who want to shoot at tin cans or rabbits from the road." (Assem. Com. on Public Safety, Republican Analysis of Assem. Bill No. 3066 (1987–1988 Reg. Sess.) Mar. 12, 1988.)

The bill was later amended to extend the statute's reach beyond cities and to require that injury or death of another be reasonably foreseeable.[8] Another amendment mandated that the willful shooting be done with gross negligence and made the offense a "wobbler."[9]

---

[7] The amended language read, "Except as specifically authorized by law, any person who willfully discharges a firearm while in a city which has enacted an ordinance prohibiting or restricting the discharge of a firearm within the boundaries of the city without a police permit is guilty of a felony if the discharge of that firearm occurs under circumstances or conditions likely to injure or kill another person. The discharge of a firearm occurring in the presence of others shall be a factor to consider as to whether the discharge of a firearm under those instances constitutes a circumstance or condition likely to injure or kill another person." (Assem. Amend. to Assem. Bill No. 3066 (1987–1988 Reg. Sess.) Mar. 10, 1988.)

[8] "Except as otherwise authorized by law, any person who willfully discharges a firearm under circumstances or conditions and in a manner which reasonably could be foreseen by that person to result in injury or death to another person is guilty of a felony." (Assem. Amend. to Assem. Bill No. 3066 (1987–1988 Reg. Sess.) Mar. 24, 1988, § 1.)

[9] "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner is guilty of a public offense and shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison." (Sen. Amend. to Assem. Bill No. 3066 (1987–1988 Reg. Sess.) June 2, 1988, § 1.)

A fifth amended version was finally enacted, prohibiting willful shooting "in a grossly negligent manner which could result in injury or death to a person." (Sen. Amend. to Assem. Bill No. 3066 (1987–1988 Reg. Sess.) Aug. 11, 1988, § 1.)[10]

As the Attorney General notes, the first case to interpret section 246.3 was *Alonzo, supra,* 13 Cal.App.4th 535. Alonzo shot a gun into the air while standing in a busy parking lot. He argued that firing a gun straight up into the air was not grossly negligent conduct within the meaning of section 246.3. The trial court's order setting aside the charge was reversed on appeal.

After reciting the purpose of the legislation and its history, the *Alonzo* court concluded that defendant's conduct violated section 246.3. "Since the Legislature did not define 'gross negligence' for purposes of the statute, it appears from the statutory language and the legislative history that it intended that term to have the meaning commonly attributed to it in criminal law, but to criminalize such conduct only if, under the circumstances, it actually had the potential for culminating in personal injury or death.

■ "Gross negligence, as a basis for criminal liability, requires a showing that the defendant's act was ' "such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences." ' (*People* v. *Penny* (1955) 44 Cal.2d 861, 879 [285 P.2d 926], quoting 26 Am.Jur., Homicide, § 210, p. 299; CALJIC No. 3.36.) It is beyond dispute that shooting a gun in a commercial area where people are present constitutes gross negligence under this definition.

"Therefore, the only remaining issue is whether respondent's grossly negligent behavior could have resulted in injury or death to a person. We have no difficulty in concluding that it could. The shooting of a gun under the circumstances presented in this case not only presented the possibility of hitting a member of the public, it also presented the very real possibility that it would generate responsive gunfire. The fact that the gun was pointed up in the air does not change this reality. In fact, this was precisely the type of behavior that the statute was intended to deter. The author of the bill explained that it 'addresse[d] the reckless and senseless discharge of weapons on holidays that resulted in the death of at least 2 persons, . . . in the Los

---

[10] The fourth amendment declared that the bill was to take effect immediately as an urgency statute. (Sen. Amend. to Assem. Bill No. 3066 (1987–1988 Reg. Sess.) June 16, 1988, § 3.)

Angeles area alone.' (Letter from Assem. Richard Polanco to Gov. George Deukmejian for signature on Assem. Bill No. 3066, Sept. 12, 1988.) Therefore, the magistrate properly denied respondent's motion to set the charge aside." (*Alonzo, supra*, 13 Cal.App.4th at pp. 539–540.)

The Attorney General relies on *Alonzo*'s statement that the Legislature intended section 246.3(a) to criminalize grossly negligent shooting "only if, under the circumstances, it *actually* had the potential for culminating in personal injury or death." (*Alonzo, supra*, 13 Cal.App.4th at p. 539, italics added.) From this the Attorney General argues that section 246.3(a), unlike section 246, requires "the actual presence of a person in harm's way."[11]

The argument fails both logically and factually. The question boils down to this: In order to prove a violation of section 246.3(a), does the prosecution have to show that an identifiable person was actually in danger of injury or death from the defendant's grossly negligent shooting, or is it sufficient to prove it was reasonably foreseeable that human injury or death might result under the circumstances? The latter interpretation is borne out by the legislative history. The phenomenon that gave rise to the statute was celebratory gunfire in an urban setting. It seems clear that the Legislature intended to proscribe such grossly negligent conduct precisely because it could cause injury or death. Given this reality, it is equally clear that the Legislature did *not* intend to require proof that a given person was actually so endangered. Imposing such a burden on the prosecution would render the statute largely unenforceable in the very circumstances that prompted its enactment. No one knows where shots fired recklessly into the air are likely to land.

■ Thus we conclude that section 246.3(a) is a necessarily included lesser offense of section 246. Both offenses require that the defendant willfully fire a gun. Although the mens rea requirements are somewhat differently described, both are general intent crimes. The high probability of human death or personal injury in section 246 is similar to, although greater than, the formulation of likelihood in section 246.3(a), which requires that injury or death "could result." The only other difference between the two, and the basis for the more serious treatment of a section 246 offense, is that the greater offense requires that an inhabited dwelling or other specified object be within the defendant's firing range. All the elements of section 246.3(a) are necessarily included in the more stringent requirements of section 246.

---

[11] A committee analysis of the final bill arguably supports the Attorney General. It stated that the added language "which could result in injury or death" "makes it clear that the discharge of the firearm *must actually create a danger to a person, instead of in the abstract.*" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3066 (1987–1988 Reg. Sess.), italics added.)

## III.  DISPOSITION

The judgment of the Court of Appeal is reversed. The matter is remanded with directions to reverse three of the grossly negligent shooting counts.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

On March 18, 2009, the opinion was modified to read as printed above.