Filed 3/3/15; unmodified opn. attached

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>TYRONE TITTLE et al.,<br><br>     Defendants and Appellants. | B253135<br><br>(Los Angeles County<br>Super. Ct. No. TA126434)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[CHANGE IN THE JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 17, 2015, be modified in the following manner:

1.     On page 12, the entire Part V discussion (including the heading and the subsequent paragraph) is deleted and replaced with the following:

> V.     Prior Serious Felony Enhancements on Felon in Possession and Evading a Peace Officer Counts

Appellants argue that the trial court erred by adding five-year enhancements to the sentences imposed for counts 3 and 4 (felon in possession of a firearm) and count 5 (evading a peace officer) on the basis of section 667, subdivision (a)(1).  Appellants are correct, and respondent concedes the error.  The enhancement under subdivision (a)(1) of section 667 applies to only the "serious" felonies listed in subdivision (c) of section 1192.7 (see § 667,

---

[*]     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I, II, IV-VI of the Discussion.

subd. (a)(4)), and neither possession of a firearm by a felon nor evading a peace officer is on the list. Those enhancements must accordingly be stricken.

2.	On page 13, the first sentence of the Disposition is deleted and replaced with the following sentence: "As to counts 3, 4, and 5, the five-year enhancements under subdivision (a)(1) of section 667 are stricken."

The modifications constitute a change in the judgment.

Appellant's petition for rehearing is denied.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


ROTHSCHILD, P. J.	JOHNSON, J.	MILLER, J.[*]

---

[*]	Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/17/15; unmodified opn.

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYRONE TITTLE et al.,<br><br>    Defendants and Appellants. | B253135<br><br>(Los Angeles County<br>Super. Ct. No. TA126434) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Eleanor J. Hunter, Judge.  Judgment affirmed as modified.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant Tyrone Tittle.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant Kevin Jackson.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

[*]    Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I, II, IV-VI of the Discussion.

Tyrone Tittle and Kevin Jackson appeal from their convictions and sentences on charges of attempted murder, shooting at an inhabited dwelling, and related offenses. We agree that certain sentence enhancements should be stricken and a clerical error should be corrected, but we otherwise affirm.

BACKGROUND

The amended information charged Tittle and Jackson with one count of attempted willful, deliberate, and premeditated murder under Penal Code section 187, subdivision (a), and section 664 (count 1) and one count of shooting at an inhabited dwelling under Penal Code section 246 (count 2).[1] It charged each defendant with one count of possession of a firearm by a felon, in violation of subdivision (a)(1) of section 29800 (count 3 as to Jackson and count 4 as to Tittle).[2] It further charged Tittle with one count of attempting to elude a pursuing peace officer with willful or wanton disregard for the safety of persons or property, in violation of subdivision (a) of Vehicle Code section 2800.2 (count 5). It also included firearm use enhancements pursuant to section 12022.53, subdivisions (b), (c), (d), and (e)(1), gang enhancements pursuant to section 186.22, and various prior conviction and prior prison term enhancements.

Both defendants pleaded not guilty and denied all allegations. The prior convictions allegations were bifurcated, and the charges were tried to a jury. The jury found Tittle and Jackson guilty on all counts and found as to both defendants that the attempted murder in count 1 was willful, premeditated, and deliberate. Also as to count 1, the jury found true the allegations that Jackson personally used and personally and intentionally discharged a handgun within the meaning of section 12022.53, subdivisions (b) and (c). The jury was unable to reach a verdict as to the other special

---

[1]      All subsequent statutory references are to the Penal Code unless otherwise indicated.

[2]      Apparently because of a typographical error, counts 3 and 4 of the amended information refer to section 22900 instead of section 29800. (See also Part VI, *post*.)

2

allegations. The prior conviction allegations were tried to the court, which found them true.

The court sentenced Tittle to an indeterminate term of 21 years to life plus a consecutive determinate term of 21 years 4 months, calculated as follows: an indeterminate term of 21 years to life on count 1 (7 years to life, doubled for a prior strike, plus 5 years for a prior serious felony, plus 2 years for two prior prison terms); plus a determinate term of 13 years on count 4 (the upper term of 3 years, doubled for a prior strike, plus 5 years for a prior serious felony; plus 2 years for two prior prison terms); plus a determinate term of 8 years 4 months on count 5 (1 year 4 months, plus 5 years for a prior serious felony, plus 2 years for two prior prison terms). The court also imposed a 7-year sentence for count 2 but stayed it pursuant to section 654. The court imposed various statutory fines and fees, ordered Tittle to provide DNA samples, and credited him with 268 days of presentence custody (234 days actual time and 23 days good time/work time).

The court sentenced Jackson to an indeterminate term of 41 years to life plus a consecutive determinate term of 13 years, calculated as follows: an indeterminate term of 41 years to life on count 1 (7 years to life, doubled for a prior strike, plus 20 years for the firearm enhancement, plus 5 years for a prior strike, plus 2 years for two prior prison terms); plus a determinate term of 13 years on count 3 (upper term of 3 years, doubled for a prior strike, plus 5 years for a prior serious felony; plus 2 years for two prior prison terms). The court also imposed a 7-year sentence for count 2 but stayed it pursuant to section 654. The court imposed various statutory fines and fees, ordered Jackson to provide DNA samples, and credited him with 380 days of presentence custody (335 days actual time and 45 days good time/work time).

The evidence introduced at trial showed the following facts: On January 1, 2013, Dachia Jackson was attending a birthday celebration for her mother at her grandmother's house. There were about 30 or 40 people attending the celebration, including children playing outside in front and in back.

3

At approximately 4:00 p.m., a silver Mitsubishi SUV arrived. Tittle was the driver, Jackson was in the front passenger seat, and there were two other young men in the car. Tittle's mother testified that earlier in the day, Tittle, Jackson, and two other young men were using her silver Mitsubishi SUV to help her move to a new residence. She was following them in another car but lost them when she stopped at a red light, and she did not see her SUV again until she picked it up at the impound lot several days later.

Jackson got out of the car and was holding a gun in his hand. Two of the people attending the party (one was Jackson's cousin; the other had grown up with Jackson) confronted Jackson and asked him to leave. Jackson got back in the SUV, which then drove away.

The SUV returned a few minutes later, with Tittle still driving. Jackson got out and fired multiple shots toward the yard, wounding one person in the leg. A witness testified that just before Jackson started shooting, Tittle said to him, "Spray everything." Another witness testified that she observed the driver of the SUV holding a rifle but did not see it fired.

After one of the witnesses called 911, police officers responded to the scene of the shooting and then broadcast by radio a description of the suspects and the SUV. Other officers, who were on their way to respond to the 911 call, then heard the description and spotted a silver SUV matching it. The officers followed, activated the patrol car's lights and siren, and attempted to pull over the SUV, but the SUV sped away. In the course of the chase, the SUV ran two red lights and was going approximately 60 miles per hour in a 35 mile per hour zone.

The SUV eventually crashed, and its occupants scattered. Three of them were detained near the scene of the crash, but the fourth (Tittle) was not arrested until April 2013. Officers searched the SUV after the crash and found a rifle and a submachine gun on the floor in the back seat.

DISCUSSION

I.       *Wheeler*/*Batson* Motion

During jury selection, Tittle and Jackson jointly objected on the basis of *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) to the prosecution's peremptory dismissal of three African-American prospective jurors, numbers 15, 22, and 36.  The trial court denied the motion.  Tittle and Jackson argue that the court erred, but we are not persuaded.

When asked whether his experience of growing up and living in Compton "would cause any problems," prospective juror number 15 answered, "Yeah, it could be." When asked in what way it might cause problems, he referred to "some people that did some shooting and they got some time that I didn't think was fair."  The court then informed him that the jury is not involved in sentencing and must, if convinced of the defendant's guilt, return a guilty verdict, regardless of what the sentence might be.  But when the court asked him, "Could you do that?"  He answered, "I can try."  When repeatedly asked essentially the same question—whether he could put aside his misgivings about sentencing and return a guilty verdict if convinced of guilt on the basis of the evidence—he repeatedly gave similarly equivocal answers:  "I don't know.  I said I could try."  "Possible.  I don't know.  I mean, I guess.  I guess I can be fair."  "I don't know.  I don't know."  Finally, the court asked, "You might just say 'not guilty,' even though you think they're guilty because you're worried about punishment?"  Prospective juror number 15 answered, "Possibly."  The prosecution later asked that prospective juror number 15 be removed for cause, but the court denied the request.  The prosecutor then exercised a peremptory challenge to prospective juror number 15.

Prospective juror number 22 had a brother who was a sheriff's deputy and also had extended family members who were gang members.  When another prospective juror said that "the criminal justice system, in general, is a fair one," and that "it's probably the fairest system that we have in the world," the prosecutor asked if anyone disagreed.  Prospective juror number 22 was the only one who spoke up, stating, "I mean, I feel it— it's still—we have a great system, but I think it could be a lot better."  Upon further

5

questioning, he added that he believed that "[a] lot of times it seems like outside forces are determining outcomes of cases," and when asked to identify such outside forces, he mentioned "the media." The prosecutor exercised a peremptory challenge to prospective juror number 22.

Prospective juror number 36 was a pastor whose younger brother was murdered in gang violence. As a pastor, he counsels young men to try to steer them away from gangs "all the time," and on the day of voir dire, if he had not been on jury duty, he would have been appearing as "a character witness for a young man who is about 22 years old who was in court." He has also performed funeral services for gang members. When asked again about his counseling of young people, he said, "One of the issues that I deal with on a weekly basis is both—young men that I believe are innocent who are being arrested and thrown in prison, and most of the time they're pleading cases. [¶] I have one young man, just recently they gave him two years. He's 21 years old. But they were trying to give him seven years. So he pled guilty to something he didn't do, but he was so afraid." The prosecutor then asked, "Do you find yourself taking an advocacy role in court? I guess you said you serve as a character reference from time to time?" Prospective juror number 36 answered, "I do." He further explained, "Typically, it's pretrial, that I write a lot of letters of—character reference letters." The prosecutor exercised a peremptory challenge to prospective juror number 36.

The following day, defendants made a joint motion under *Batson* and *Wheeler*, contending that they were being deprived of a "fair and impartial jury" because the prosecutor had excluded prospective jurors numbers 15, 22, and 36 on the basis of their race. The court concluded that "there's a prima faci[e] case that has been made" and asked the prosecutor to state his reasons for excusing those prospective jurors. As to prospective juror number 15, the prosecutor mentioned, among other things, his expression of doubt about whether he could be fair and his reference to people he knew who were "incarcerated for a shooting." As to prospective juror number 36, the prosecutor his "close connections with gang members," his statement that he "had acted basically as an advocate for gang members," and his description of "what he perceived as

6

injustices in the criminal justice system," such as innocent young men pleading guilty out of fear. As to prospective juror number 22, the prosecutor said that "he was the only juror to volunteer any feeling that the system was unfair. So that was why I struck him."

The trial court denied defendants' motion, concluding that the prosecutor had articulated a race-neutral basis for excluding each of those three prospective jurors. The court also mentioned, with respect to prospective juror number 22, that prospective juror number 27 had expressed a similar belief that the criminal justice system is not fair, and the prosecutor had excused him as well. Prospective juror number 27 was a Caucasian male physician.

"The United States Supreme Court has given this explanation of the process required when a party claims that an opponent has improperly discriminated in the exercise of peremptory challenges: '[O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.' [Citation.]" (*People v. Silva* (2001) 25 Cal.4th 345, 384 (*Silva*).) The court's evaluation, at step three, of the genuineness of the prosecution's race-neutral explanation is generally entitled to "great deference" (*People v. Fuentes* (1991) 54 Cal.3d 707, 720), but only if "the trial court has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror." (*Silva*, *supra*, 25 Cal.4th at p. 386.) "[W]hen the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both," the trial court must do more than make "a global finding that the reasons appear sufficient." (*Ibid.*) But "[w]hen the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings." (*Ibid.*)

The prosecutor's stated reasons were both inherently plausible and supported by the record. Prospective juror number 15 repeatedly expressed uncertainty about whether he could put considerations of sentencing aside and vote for a guilty verdict even if

7

he was convinced that the elements had been proven beyond a reasonable doubt. Prospective juror number 22 was the only prospective juror who (during the relevant portion of voir dire) expressed the disagreement with the view that the criminal justice system is fair. Prospective juror number 36 also expressed concerns about injustices in the criminal justice system and had acted as an advocate for gang members. Because all of those reasons are inherently plausible and supported by the record, we defer to the trial court's determination that the prosecutor's race-neutral explanations were genuine. We therefore must reject appellants' challenge to the ruling on their *Wheeler/Batson* motion.

II.     Lack of Instruction on Grossly Negligent Discharge of a Firearm

Appellants argue that, as to count 2, the trial court had a duty to instruct the jury on grossly negligent discharge of a firearm, which is a lesser included offense of shooting at an inhabited dwelling (*People v. Ramirez* (2009) 45 Cal.4th 980, 990). We disagree.

"'[T]he sua sponte duty to instruct on a lesser included offense arises if there is substantial evidence the defendant is guilty of the lesser offense, but not the charged offense.'" (*People v. Moye* (2009) 47 Cal.4th 537, 556, quoting *People v. Breverman* (1998) 19 Cal.4th 142, 177.) The elements of a violation of section 246 (shooting at an inhabited dwelling) are "(1) acting willfully and maliciously, and (2) shooting at an inhabited house." (*Ramirez*, *supra*, 45 Cal.4th at p. 985.) The elements of a violation of subdivision (a) of section 246.3 are "'(1) the defendant unlawfully discharged a firearm; (2) the defendant did so intentionally; (3) the defendant did so in a grossly negligent manner which could result in the injury or death of a person.' [Citation.]" (*Ramirez*, *supra*, 45 Cal.4th at p. 986.)

Appellants quote *Ramirez* for the proposition that "'[s]ection 246.3 was enacted primarily to deter the dangerous practice that exists in some communities of discharging firearms into the air in celebration of festive occasions . . . .' [Citation.]" (*Ramirez*, *supra*, 45 Cal.4th at p. 987.) Appellants then argue that, at the scene of the charged shooting, "there was a celebration underway at the house" and because Jackson was "drunk," the jury could reasonably infer that he "was in a celebratory mood." They also note that one witness stated that "Jackson first fired rounds into the air." In view of the

8

initial shots fired into the air, the celebration, and Jackson's intoxication and putative celebratory mood, appellants infer that the jury could have convicted him of violating section 246.3 but not section 246.

We are not persuaded. It does not matter whether there was a celebration in the house or whether Jackson was in a celebratory mood. The issue is whether the record contains substantial evidence from which a jury could infer that Jackson committed the crime of grossly negligent discharge of a firearm but did not commit the crime of shooting at an inhabited dwelling. It does not. There is no evidence that Jackson fired the gun *but not at the house*. Nor is there evidence that he fired at the house *but it was not inhabited*. Rather, the evidence showed that he fired multiple shots at the house where Dachia Jackson's grandmother lived. Numerous people were present both inside and outside at the time of the shooting, and the gunfire wounded one of them in the leg.

Because the record does not contain substantial evidence that Jackson violated subdivision (a) of section 246.3 but did not violate section 246, we must reject appellants' argument that the court erred by failing to instruct the jury on section 246.3.

III.     Recidivism Enhancements for Each of Multiple Determinate Sentences

Tittle argues that the trial court erred by adding sentence enhancements for prior prison terms (under section 667.5) and a prior serious felony (under section 667, subdivision (a)) to the determinate sentences imposed for both counts 4 and 5. According to Tittle, those enhancements should have been added to only the base term, which was imposed for count 4. We disagree.

Tittle's argument is based largely on *People v. Tassell* (1984) 36 Cal.3d 77, which concerned multiple determinate sentences imposed pursuant to section 1170.1. *Tassell* held that, in that context, enhancements based on the characteristics of the current offense (such as firearm use) could be added to the determinate term for each applicable count, but enhancements based on the defendant's status (such as prior convictions or prior prison terms) could be added only once, to the aggregate sentence. (*Tassell*, *supra*, 36 Cal.3d at p. 90.)

*Tassell* is distinguishable, however, because Tittle was sentenced under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12), not under section 1170.1. In *People v. Williams* (2004) 34 Cal.4th 397, the Supreme Court explained that "[t]he Three Strikes Law, unlike section 1170.1, does not draw any distinction between status enhancements, based on the defendant's record, and enhancements based on the circumstances of the current offenses, and the Three Strikes Law generally discloses an intent to use the fact of recidivism to separately increase the sentence imposed for each new offense." (*Id.* at pp. 404-405.) Accordingly, the Court held that "under the Three Strikes Law, section 667(a) enhancements are to be applied individually to each count of a third strike sentence." (*Id.* at p. 405.)

Although *Williams* is not directly on point, because it dealt with indeterminate sentences imposed on third strike offenders rather than determinate sentences for second strike offenders, its reasoning strongly suggests that the result for second strike offenders would be the same. Moreover, some of the Court's discussion in *Williams* directly addressed second strike sentences, noting that under the Three Strikes Law, "[f]or a defendant with a single qualifying prior conviction [i.e., a second strike offender], the sentence for each new offense is double what it otherwise would be." (*Williams*, *supra*, 34 Cal.4th at p. 404.) Again, the Court's discussion confirms the statutory intent to increase the sentence for each of the current qualifying offenses on the basis of the defendant's recidivism, even for second strike offenders.

*People v. Misa* (2006) 140 Cal.App.4th 837 (*Misa*) took that approach. *Misa* applied *Williams* and held when a second strike offender received both an indeterminate sentence (for one count of torture) and a determinate sentence (for one count of assault), a prior conviction enhancement under section 667, subdivision (a), was properly added to each sentence. (*Misa*, *supra*, 140 Cal.App.4th at p. 847.)

*Misa* too is distinguishable, because it did not address the imposition of recidivism enhancements for each of several *determinate* sentences. But we conclude that the reasoning of *Williams* compels the same result here as in *Misa*. Tittle was sentenced under the Three Strikes Law, not under section 1170.1. *Williams* is therefore controlling,

10

and *Tassell* is inapplicable.  Under *Williams*, the intent of the Three Strikes Law is to impose recidivism enhancements for each of the defendant's current qualifying offenses, in the case of both third strike offenders and second strike offenders.  We therefore conclude that the trial court properly imposed prior conviction and prior prison term enhancements as to both counts 4 and 5.[3]

IV.    Reasons for Imposing Consecutive Sentences

Appellants argue that the trial court erred by failing to state its reasons for imposing the determinate and indeterminate sentences consecutively rather than concurrently.  Appellants failed to raise the issue at sentencing, however, so they have forfeited it.  (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1297-1298.)

Appellants also argue that they received ineffective assistance from their trial counsel, because counsel did not object to the court's failure to state reasons for the consecutive sentences.  We disagree because the consecutive sentences were mandatory under subdivision (c)(6) of section 667, which provides that "[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to [this section]."  The respondent's brief correctly argues that under that statute, as interpreted by *People v. Lawrence* (2000) 24 Cal.4th 219, appellants' crimes of attempted murder, possession of a firearm by a felon, and attempting to elude a peace officer (Tittle only) were committed on different occasions and arose from different operative facts, so consecutive sentences were mandatory.  Appellants present no argument to the contrary in their reply briefs.  Trial counsel's decision not to object to the trial court's failure to state its reasons for consecutive sentences was therefore both reasonable and harmless, because the trial court did not have discretion to impose concurrent sentences.

---

**3**    We note that this issue is presently pending before the California Supreme Court in *People v. Sasser*, review granted May 14, 2014, S217128.

11

V.     Prior Serious Felony Enhancements on Felon in Possession Counts

Appellants argue that the trial court erred by adding five-year enhancements to the sentences imposed for counts 3 and 4 (felon in possession of a firearm) on the basis of section 667, subdivision (a)(1).  Appellants are correct, and respondent concedes the error.  The enhancement under subdivision (a)(1) of section 667 applies to only the "serious" felonies listed in subdivision (c) of section 1192.7 (see § 667, subd. (a)(4)), and possession of a firearm by a felon is not one of them.  Those enhancements must accordingly be stricken.

VI.     Clerical Error

Appellants argue that both the minute orders reflecting the jury verdicts and the abstract of judgment contain clerical errors, namely, that they cite the wrong Penal Code provision for possession of a firearm by a felon.  We agree.  The correct Penal Code section is subdivision (a)(1) of section 29800.  On remand, the trial court shall modify the minute orders as to count 3 (Jackson) and count 4 (Tittle) and also prepare new abstracts of judgment for each defendant, correcting that error.

DISPOSITION

As to counts 3 and 4, the five-year enhancements under subdivision (a)(1) of section 667 are stricken.  The trial court is directed to enter an order modifying, nunc pro tunc, the minute orders of November 19, 2013, to reflect that count 3 (Jackson) and count 4 (Tittle) charged violations of subdivision (a)(1) of section 29800.  The court shall also prepare new abstracts of judgment, correcting those sentencing and clerical errors, and forward copies to the Department of Corrections and Rehabilitation.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:


JOHNSON, J.


MILLER, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.