Filed 5/11/21  P. v. Floyd CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077026 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD278543) |
| STEPHEN FLOYD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Amalia L. Meza, Judge.  Judgment affirmed; remanded with directions to modify the abstract of judgment

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kelley A. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant Stephen Floyd appeals from a judgment entered after a jury convicted him of committing elder abuse likely to cause great bodily injury or death, assault with force likely to cause great bodily injury, and delaying a peace officer.

Floyd raises two challenges to the judgment and a third contention that the abstract of judgment requires correction. First, Floyd argues that there is insufficient evidence that he knew or should have known that his victim was 65 years of age or older, requiring reversal of his conviction for elder abuse. Second Floyd argues that he cannot remain properly convicted of both elder abuse likely to cause great bodily injury or death and assault with force likely to cause great bodily injury because the latter is a lesser included offense of the former. Finally, Floyd argues that the abstract of judgment refers to the wrong statutory subdivision for an enhancement imposed in connection with the elder abuse count.

We conclude that Floyd's challenges to his convictions are without merit. However, we agree that the abstract of judgment must be corrected to align with the trial court's oral pronouncement of judgment. We therefore affirm the judgment of conviction but remand for the trial court to modify the abstract of judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*

In 2018, Floyd and the victim, R.W., were both transients who were living in an area near the Torrey Pines Glider Port in La Jolla. Floyd lived in a canyon to the east of the Glider Port's parking lot, and R.W. would often sit

2

in a beach chair under an umbrella near the guardrail of the parking lot. The two men had known each other since approximately 2009 or 2010, when they met at the beach. According to R.W., he and Floyd had engaged in about a dozen conversations over the years.

On September 10, 2018, R.W. who was 65 years old, was sitting in his usual location by the guardrail when Floyd approached him and yelled, " 'I'm going to kill you.' " Floyd began punching R.W. as R.W. was still in the chair. R.W. tried to cover his head during the attack. At some point, R.W. fell out of the chair, and Floyd continued to hit and kick R.W. while he was on the ground. According to R.W., when he fell out of the chair, Floyd came down on top of him and "crushed [his] hip." An unidentified man pulled Floyd off of R.W., ending the attack.

R.T. was sitting in his car at the Glider Port and witnessed the entire attack. After the unidentified man pulled Floyd off of R.W. and left, R.T. could hear R.W. screaming that he was in pain and that he could not move. R.T. called 911, and an ambulance arrived soon after. While medical personnel were tending to R.W., R.W. saw Floyd walking toward the canyon. R.W. identified Floyd as his assailant.

Police officers responded to the scene and located Floyd approximately 100 feet down a steep and narrow path in the canyon. When officers tried to handcuff Floyd, he went limp and fell to the ground. After approximately 30 minutes, officers were able to get Floyd to comply with their orders to stand and walk out of the canyon on his own.

R.W. was taken to a hospital. He had suffered a fractured hip, which required surgery for the placement of a pin in the hip. R.W. spent six weeks in a rehabilitation facility. Until two weeks before the trial, R.W. had been using the assistance of a cane to walk. Although R.W. continued to have

3

difficulty walking at the time of trial, he testified that he had lost his cane and could not afford a new one. He described himself as "stumbling around" without it.

Floyd testified on his own behalf. He stated that he had wanted to be friends with R.W., but R.W. did not want his friendship. Floyd described a few of the social interactions the men had engaged in together. For example, the men had once eaten nachos together at a restaurant and had a couple of drinks. Another time, Floyd had allowed R.W. to take a shower in a hotel room Floyd was staying in for a short period of time, and afterward the pair ate dinner at the hotel buffet. Floyd would sometimes give R.W. cigarettes and part of his lunch. On another occasion, R.W. drove Floyd to the grocery store.

Floyd described how in 2015, R.W. had hit Floyd with his truck two times. Floyd had an injury to his hip as a result, and a large bruise on his waist. According to Floyd, after this incident, Floyd tried to avoid R.W. at the Glider Port.

On September 10, 2018, Floyd decided that he was going to try to talk to R.W. Floyd claimed that as he approached the location where R.W. could usually be found, he tripped, fell, and lost consciousness. When he regained consciousness, R.W. was hitting him in the head with a golf club. Floyd tried to stand up, but his legs were wrapped around R.W., and R.W. fell down on top of him. Floyd pushed R.W. off of him and walked away. When he tried to go back to help R.W. stand up, someone else was standing over R.W. and told Floyd to stay away.

A former neighbor of Floyd's before Floyd became homeless testified to having seen bruising on Floyd that Floyd had said he received when someone at the Glider Port hit him with a truck.

4

Another witness, R.K., also testified for the defense.  R.K. had started going to the Glider Port area to rest after receiving chemotherapy treatments, and he became familiar with some of the homeless individuals who lived in the area.  R.K. testified that on several occasions he had observed R.W. acting "extremely violent" when he was drunk.

B.  *Procedural background*

A jury convicted Floyd of elder abuse likely to cause great bodily injury or death (Pen. Code,[1] § 368, subd. (b)(1); count 1); assault with force likely to cause great bodily injury (§ 245, subd. (a)(4); count 2); and delaying a peace officer (§ 148, subd. (a)(1); count 3).  The jury also found true the enhancement allegations with respect to count 1 that the victim suffered great bodily injury during the commission of the offense (§§ 368, subd. (b)(2), 12022.7, subd. (e)), and that Floyd personally inflicted great bodily injury on the victim (§ 1192.7, subd. (c)(8)).  The jury also found true with respect to count 2 that Floyd personally inflicted great bodily injury upon the victim (§§ 1192.7, subd. (c)(8)), 12022.7, subd. (a)).

The trial court sentenced Floyd to a term of six years in state prison, comprised of the midterm of three years on count one, plus a consecutive three-year term for the great bodily injury enhancement connected with count 1, and a concurrent one-year term on count 3.  The court imposed but stayed, pursuant to section 654, the midterm of three years for the assault in count 2, and an additional three-year enhancement term for the great bodily injury enhancement finding connected with count 2.

Floyd filed a timely notice of appeal.

---

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

5

III.

DISCUSSION

A. *Substantial evidence supports Floyd's conviction for elder abuse*

Floyd contends that his conviction for elder abuse in count 1 must be reversed because the evidence was insufficient to establish that he knew or reasonably should have known that R.W. was 65 years old or older at the time Floyd attacked him.

In considering a claim of the insufficiency of evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) The court must "review the whole record in the light most favorable to the judgment [below] to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, citing *People v. Johnson* (1980) 26 Cal.3d 557, 578.) Reversal is not warranted unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) This standard applies regardless of whether the conviction rests on circumstantial evidence or on direct evidence. (*People v. Chatman* (2006) 38 Cal.4th 344, 389; *People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

Floyd challenges his conviction for violating section 368, subdivision (b)(1), which provides: "A person who knows or reasonably should know that the person is an elder . . . and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder

6

or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, . . . is punishable by imprisonment . . . ." As used in section 368, " 'elder' means a person who is 65 years of age or older." (§ 368, subd. (g).) The jury was instructed, pursuant to CALCRIM No. 830, that in order to prove that Floyd was guilty of the elder abuse offense, the People had to prove that:

> "1. The defendant willfully inflicted unjustifiable physical pain or mental suffering on [R.W.];
>
> "2. The defendant inflicted suffering on [R.W.] under circumstances or conditions likely to produce great bodily harm or death;
>
> "3. [R.W.] is an elder;
>
> "AND
>
> "4. When the defendant acted, he knew or reasonably should have known that [R.W.] was an elder."

The instruction also told the jury that "[a]n *elder* is someone who is at least 65 years old."

Floyd specifically challenges the sufficiency of the evidence with respect to the fourth element as set forth in the instruction—i.e., that he knew or reasonably should have known that R.W. was at least 65 years old.[2] We reject Floyd's contention.

In *People v. Smith* (1993) 13 Cal.App.4th 1182 (*Smith*), a jury found true the factual basis for a two-year enhancement under section 667.9, which applies where the defendant is found to have committed certain enumerated felony offenses against three classes of vulnerable victims, including persons

_____

[2] Floyd does not dispute that R.W. was 65 years of age at the time of the offense.

over 65 years of age or older, while having suffered a prior conviction for one of the same enumerated felonies. (§ 667.9.) Two elements of the enhancement at issue in that case were that the defendant have committed the enumerated felony against a person 65 years or older and the defendant knew or reasonably should have known that the victim was 65 years old or older. (See *Smith*, *supra*, at p. 1184.) Like Floyd, the defendant in *Smith* challenged the sufficiency of the evidence to support the jury's finding that he reasonably should have known that his victim, who was 67 at the time of the offense, was 65 years or older. (*Id.* at pp. 1190–1191.)

The *Smith* court rejected the defendant's challenge, noting that "the record shows that the evidence presented to the jury included [the victim's] physical appearance before the jury," as well as evidence that the victim "was just three months short of her sixty-eighth birthday on the day of the robbery." (*Smith*, *supra*, 13 Cal.App.4th at p. 1190.) The court further explained that based on this evidence, the court must "therefore presume, in support of the judgment, that the jury could reasonably deduce from its view of [the victim's] physical appearance that defendant reasonably should have known that she was at least 65 years old." (*Ibid.*)

*Smith* is virtually indistinguishable from this case. The evidence presented with respect to whether Floyd "knew or reasonably should have known that [the victim] was an elder" in this case is essentially the same as the evidence that the *Smith* court found sufficient to support the jury's finding on an age-based knowledge element in that case. Here, there was evidence that R.W. was 65 years old when Floyd committed the offense, and the jury was able to view R.W.'s physical appearance, both at the time of trial and through exhibits of photographs taken on the date of the offense that were presented at trial.

8

We agree with the *Smith* court that given this evidence, and viewing it in the light most favorable to the judgment, a jury could have reasonably determined that Floyd actually knew or should have known that his victim was 65 years old at the time of the offense. We therefore reject Floyd's contention that his conviction for elder abuse must be reversed based on the insufficiency of the evidence that he knew or should have known his victim was 65 or older.

B. *Floyd is not entitled to reversal of his conviction for assault by means of force likely to produce great bodily injury because it is not a lesser included offense of elder abuse*

Floyd argues that he cannot stand convicted of both elder abuse and assault with force likely to cause great bodily injury because the latter is a lesser included offense of the former. Specifically, Floyd argues that in order "[t]o decide whether an offense is included in another offense for purposes of the prohibition on multiple convictions for the same act or course of conduct, courts apply the elements test. Under this test, if all of the statutory elements of one offense are included in another offense, the former is a necessarily included offense." Floyd asserts that "[a]pplying the test here, it is plain that one cannot commit elder abuse without also committing an assault by means/force likely to produce great bodily injury. The latter is a necessarily included offense of the former."

The People contend that under the " 'elements test' – which looks to the *statutory elements* of both offenses – assault with force likely to cause great bodily injury is not a lesser included offense of elder abuse."

9

Generally, a defendant may be convicted of multiple offenses arising out of a single course of conduct under section 954.[3]  However, "[w]hen a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

For purposes of instructing the jury, there are two tests for determining whether one offense is necessarily included in another:  the " 'elements' test" and the " 'accusatory pleading' test[.]"  (See *People v. Lopez* (1998) 19 Cal.4th 282, 288.)  For purposes of the rule against convictions for both greater and lesser included offenses, however, only the elements test may be used to determine whether a charged offense is necessarily included within another charged offense.  (*People v. Reed* (2006) 38 Cal.4th 1224, 1231.)  Under the elements test, a court considers only the statutory elements of the two offenses, and the question is whether all of the statutory elements of the lesser offense are necessarily included within those of the greater offense— i.e., "if a crime cannot be committed without also committing a lesser offense, the latter is a necessarily included offense." (*People v. Ramirez* (2009) 45 Cal.4th 980, 985.)

The statutory elements of abuse of an elder likely to produce great bodily harm or death as was charged in count 1 are:  (1) infliction or cause of

---

3      Section 954 provides in relevant part that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . .  The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ."

10

unjustifiable *physical pain or mental suffering* on an elder under circumstances or conditions likely to produce great bodily harm or death, (2) willfulness, and (3) when the person acted, he or she knew or reasonably should have known that the victim was an elder or dependent adult. (§ 368, subd. (b)(1); see also CALCRIM No. 830.) Again, the statute defines an "elder" as someone who is at least 65 years old. (§ 368, subd. (g); see also CALCRIM No. 830.) "Great bodily harm means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." (CALCRIM No. 830, italics omitted.)

The elements of assault with force likely to cause great bodily injury as charged in count 2 are (1) an assault, i.e., an act that by its nature would directly and probably result in the application of force to a person, (2) willfulness, and (3) force likely to produce great bodily injury. (§ 245, subd. (a)(4); see also CALCRIM No. 875.)

It is apparent from a comparison of the elements for these offenses that assault with force likely to cause great bodily injury is not a lesser included offense of elder abuse, because the offense of elder abuse under section 368 may be committed by inflicting mental suffering, alone. Thus, the elder abuse offense may be committed without necessarily committing assault with force likely to cause great bodily injury, given that assault with force likely to cause great bodily injury requires an act that by its nature would probably and directly result in the application of force to likely to produce great bodily injury to a person. We therefore reject Floyd's contention that he may not stand properly convicted of both the offense of elder abuse and assault with force likely to cause great bodily injury.

11

C. *The abstract of judgment should be amended to reflect the accurate subdivision for Floyd's section 368 enhancement*

Floyd contends that at the sentencing hearing, the trial court correctly cited to section 368, subdivision (b)(2) as the statutory basis for the three-year enhancement imposed in connection with count 1.[4] However, the abstract of judgment incorrectly lists the enhancement connected with count 1 as being based on section 368, subdivision (b)(1). He argues that this discrepancy is a clerical error that can be corrected at any time.

The People agree with Floyd that where the court's oral pronouncement of judgment conflicts with the minute order or the abstract of judgment, the court's oral pronouncement controls, and the People further concede that the abstract of judgment should be amended to reflect the court's imposition of an enhancement based on section 368, subdivision (b)(2) with respect to count 1. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["Courts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts"].) We agree that the abstract of judgment does not reflect the court's oral pronouncement of judgment and that this discrepancy is a clerical error requiring correction. (See *People v. Leon* (2020) 8 Cal.5th 831, 855 ["Any discrepancy between the judgment as orally pronounced and as recorded in the clerk's minutes or abstract of judgment is presumed to be the result of clerical error"].) We will therefore direct the trial court to enter an amended abstract of judgment that reflects that the enhancement imposed in

---

4     The minute order issued by the court for this date also indicates section 368, subdivision (b)(2) as the statutory basis for the enhancement attached to count 1.

connection with count 1 is based on section 368, subdivision (b)(2) and not on subdivision (b)(1) of that that provision.

## IV.

## DISPOSITION

The judgment is affirmed.  The matter is remanded to the trial court with directions to issue an amended abstract of judgment that correctly identifies section 368, subdivision (b)(2) as the statutory basis for the enhancement imposed in connection with count one.  The court shall forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.


AARON, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.