Filed 10/9/20  P. v. Messer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C086503 |
| Plaintiff and Respondent, | (Super. Ct. No. P16CRF0133) |
| v. | |
| JESSE DEAN MESSER, | |
| Defendant and Appellant. | |

Defendant Jesse Dean Messer and his codefendant brother Joseph Ray Messer, driving separate trucks, got into a vehicular altercation with another driver, K.N., as they drove down Highway 193 in Georgetown.[1]  The evidence in the record conflicts on the question of who started the altercation.  Either Joseph slammed on his brakes in front of K.N. or K.N. slammed on his brakes in front of defendant.  Regardless of who started it,

---

[1]     Because defendant and his brother have the same last name, to avoid confusion we refer to Joseph Messer by his first name throughout this opinion.

1

defendant escalated the conflict by pulling out a .45-caliber semiautomatic handgun and firing one or two rounds at the back of K.N.'s car as he drove away. A short time later, the men again encountered each other in a nearby parking lot. Joseph quickly pulled in front of K.N., sideswiping his driver's side rearview mirror, and got out to confront him. Defendant pulled up behind K.N. and also got out of his truck. As K.N. maneuvered around Joseph's truck and drove away, defendant fired another round at the back of his car.

Defendant was convicted by jury of two counts of assault with a semiautomatic firearm (counts 2 & 4), finding he personally used a firearm in committing the offenses, two counts of shooting at an occupied vehicle (counts 3 & 5), and two counts of possession of a firearm by a convicted felon (counts 6 & 7).[2] Following a court trial on allegations defendant was previously convicted of a serious felony offense and also served five separate prior prison terms for felony convictions, the trial court found each of these allegations to be true. Defendant was sentenced to serve an aggregate determinate term of 41 years 8 months in state prison.

On appeal, defendant contends: (1) the evidence is insufficient to support his convictions for assault with a semiautomatic firearm (count 2) and shooting at an occupied vehicle (count 3); (2) the trial court prejudicially erred by failing to instruct, sua sponte, on grossly negligent discharge as a lesser included offense to shooting at an occupied vehicle; (3) we must remand the matter to the trial court for a new sentencing hearing because Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1013, §§ 1-2) (Senate Bill 1393), which became effective January 1, 2019, and gives the trial court discretion to strike five-year prior serious felony enhancements in the interest of

---

[2]    Count 1 charged both defendant and Joseph with robbery based on K.N.'s assertion that Joseph took his cell phone during the altercation in the parking lot. The jury acquitted both defendants of this crime. We mention it no further.

justice, applies retroactively to cases not yet final on appeal; and (4) we must also remand the matter to the trial court with directions to strike all five of defendant's one-year prior prison term enhancements because Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1) (Senate Bill 136), which became effective January 1, 2020, and eliminates such enhancements for defendant's crimes, also applies retroactively to cases not yet final on appeal.

We conclude the evidence is more than sufficient to support defendant's convictions in counts 2 and 3. Indeed, these convictions are supported by his own account of events given to detectives following his arrest. Assuming, without deciding, the trial court erred in failing to instruct the jury on grossly negligent discharge of a firearm as a lesser included offense to count 3, any such error was manifestly harmless. Defendant's claims regarding the retroactive application of Senate Bill 1393 and Senate Bill 136, however, have merit and require remand for a new sentencing hearing during which the trial court shall exercise its discretion regarding the prior serious felony enhancement and strike the prior prison term enhancements.[3]

FACTS

The night of April 7, 2016, K.N. became involved in a vehicular altercation with defendant and his brother Joseph that caused defendant to fire multiple rounds at the back of K.N.'s car; he did so at two distinct locations separated spatially by less than a mile of highway and temporally by a span of several minutes. We recount the details of these shootings in the light most favorable to the judgment. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

---

[3] Our conclusion regarding Senate Bill 136 makes it unnecessary to address defendant's additional assertion that the trial court was not authorized to impose two of the five prior prison term enhancements in this case.

### *Shooting on Highway 193*

The genesis of the vehicular altercation in this case is unclear. According to defendant's statement to police following his arrest, K.N. pulled in front of his truck on Highway 193 and "starts slamming on his brakes." Defendant added: "He does it to me every time he fucking sees me." According to K.N.'s testimony at trial, as he drove down Highway 193, his car was behind Joseph's truck and in front of defendant's truck on the highway. Before K.N. realized defendant was behind him, Joseph started "slamming on his brakes and pretty much stopping in the road." K.N. used his brakes in response, and then noticed defendant was, as K.N. put it, "pretty much on my bumper."

Regardless of who stopped in front of whom on the highway, K.N.'s testimony and defendant's statement to police generally align with respect to what happened next: defendant pulled out a semiautomatic handgun and fired at the back of K.N.'s car. K.N. testified that after stopping behind Joseph's truck and seeing defendant's truck behind him, he drove around Joseph's truck and continued down the highway in order to avoid a confrontation with the brothers. As K.N. maneuvered around Joseph's truck, Joseph pulled into a parking lot on the side of the highway while defendant, still behind K.N. on the highway, held a handgun outside his driver's side window and fired at least two rounds at the back of K.N.'s car.

Although the account defendant provided to police omits any involvement by his brother in the events unfolding on the highway, he candidly admitted pulling out a .45-caliber semiautomatic handgun and firing at the back of K.N.'s car "[o]nce or twice" as K.N. "hauled ass" down the highway. Defendant claimed he did so because he thought K.N. "was pulling his gun out." Defendant also explained that when he pulled out his handgun to shoot at K.N.'s car, it accidentally discharged, sending one round into defendant's thigh. However, as defendant also explained, he "didn't even know" at first because it "didn't hurt when it happened" and "just started burning" after he fired at K.N.'s car.

4

The shooting on Highway 193 supported defendant's convictions in counts 2 and 3 for assault with a semiautomatic firearm and shooting at an occupied motor vehicle.

*Shooting in the Wellness Center Parking Lot*

After the shooting on Highway 193, K.N. continued down the highway and pulled into the parking lot of a Mar-Val grocery store less than a mile away. K.N. parked in front of the store and pulled out his cell phone to call a sheriff's deputy to whom he had previously spoken regarding an unrelated matter. Realizing he did not have that deputy's business card with him, K.N. decided to drive home. On his way back to the highway, in a smaller parking lot next to the Divide Wellness Center, K.N. had his second run-in of the night with defendant and his brother.

Meanwhile, during the brief period of time it took K.N. to drive to the store and decide to drive home, defendant and Joseph drove to a friend's house located a short distance down a road that also accessed the Mar-Val and wellness center parking lots. They left a few minutes later and headed back toward the Mar-Val grocery store, again in separate trucks.

Returning to K.N.'s testimony, as he was trying to leave, defendant and his brother pulled into the wellness center parking lot. Joseph quickly pulled in front of K.N., sideswiping his driver's side rearview mirror, and got out of his truck. Joseph was holding a knife as he approached the driver's side of K.N.'s car. Defendant pulled up behind K.N. and also got out of his truck. According to K.N., he initially pulled out his cell phone in an attempt to take photos or video of the encounter, but Joseph grabbed his phone from him. At this point, K.N. put his car in reverse in order to create enough room to maneuver around Joseph's truck, and then, as he put it, "pretty much jammed out of there." As K.N. quickly departed, defendant fired another round at the back of his car.

During defendant's statement to police, although he provided a conflicting account of how their second run-in of the night began, defendant admitted firing one round at the back of K.N.'s car as he drove away.

5

We finally note another individual, E.B., who was unloading groceries into her car in the Mar-Val parking lot when this shooting happened, testified to hearing a single shot fired from the direction of the wellness center.

The shooting in the wellness center parking lot supported defendant's convictions in counts 4 and 5 for assault with a semiautomatic firearm and shooting at an occupied motor vehicle.**4**

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to support his convictions for assault with a semiautomatic firearm (count 2) and shooting at an occupied vehicle (count 3) based on the shooting on Highway 193.  He is mistaken.

The standard of review is well settled:  "When reviewing a challenge to the sufficiency of the evidence, we ask ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.]  Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence—that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt.  [Citation.]" (*People v. Banks* (2015) 61 Cal.4th 788, 804.)

Defendant argues the evidence is insufficient to support his convictions in counts 2 and 3 because "[t]he evidence reasonably supports only one shot fired [on Highway

---

**4**     Defendant's possession of a firearm during these events, along with proof he was previously convicted of various felonies, supported his conviction in count 6 for possession of a firearm by a convicted felon.  Count 7 involved defendant's possession of a rifle when he was arrested over two weeks after shooting at K.N.'s car.

6

193]" and that "shot was unintentionally fired at [defendant's] own thigh." He bases this argument on testimony from Joseph and another defense witness, N.W., who operated an inn along the highway in the general vicinity of where the shooting occurred and was outside the inn when it happened. N.W. testified he saw two vehicles driving down the highway at a high rate of speed, a car being following by a truck. The driver of the car "leaned out of the window -- the driver's window," and appeared to be "taking exception to the fact that he was being tailgated." The car then stopped abruptly, causing the truck to do the same. N.W. heard "squealing brakes" and "a gunshot," followed "a couple of minutes" later, or "less than that," by "two shots, one after the other, and then a little bit of a break and then another shot." Defendant focuses on the first gunshot described by N.W. and argues that was the only shot fired on Highway 193, claiming the other three shots were fired in the wellness center parking lot. And because it was undisputed defendant shot himself in the thigh on Highway 193, defendant claims the only reasonable inference from the evidence is the *only* shot fired on the highway was the one that entered his thigh. N.W.'s testimony does support this view of the facts. It is also supported by Joseph's testimony. He denied being involved in the altercation between defendant and K.N. on the highway, claiming he was ahead of both vehicles and heard one shot fired behind him. Joseph also testified defendant fired multiple rounds at K.N.'s car in the wellness center parking lot.

The problem with defendant's argument is that it views the evidence in the light most favorable to himself, whereas we must view it in the light most favorable to the prosecution and ask whether any rational trier of fact could have concluded defendant fired, in addition to the round that entered his thigh, at least one other round at the back of K.N.'s car. As we have recited in some detail, and decline to repeat here, defendant's own statement to police supports the view that he accidentally shot himself in the thigh, did not even realize he did so at the time, and then fired one or two rounds at the back of K.N.'s car on Highway 193. K.N. also testified defendant fired at least two rounds at his

car on the highway. This evidence is more than sufficient to support defendant's convictions in counts 2 and 3.

Finally, we also reject defendant's argument that K.N.'s testimony was "discredited" by that of Joseph and N.W. Nor can we accept defendant's argument he "was most likely mistaken" when he told police he fired at K.N.'s car on the highway. As the jury was correctly instructed with respect to evaluating conflicting evidence, "you must decide what evidence, if any, to believe." We cannot conclude testimony from the victim in this case, corroborated by defendant's own admissions to law enforcement, amounts to insufficient evidence to support the jury's verdicts.

## II

### *Failure to Instruct on Grossly Negligent Discharge*

Defendant also claims the trial court prejudicially erred by failing to instruct, sua sponte, on grossly negligent discharge as a lesser included offense to shooting at an occupied vehicle. We conclude any error was harmless.

The trial court possesses a sua sponte duty to instruct on all lesser included offenses " 'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) However, "the existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.]" (*Id*. at p. 162.)

As defendant correctly observes, grossly negligent discharge of a firearm, requiring the willful discharge of a firearm "in a grossly negligent manner which could

8

result in injury or death to a person" (Pen. Code, § 246.3),[5] is a lesser included offense to the crime of shooting at an occupied motor vehicle (§ 246). (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1360; *People v. Ramirez* (2009) 45 Cal.4th 980, 983.)

Defendant argues instruction on grossly negligent discharge was required because there is substantial evidence in the record showing he committed that crime on Highway 193, but not the greater offense of shooting at an occupied motor vehicle. In making this argument, defendant again relies on the testimony of Joseph and N.W., both of whom claimed to have heard only one shot fired on Highway 193. Again pointing out it was undisputed he fired one round into his own thigh on the highway, defendant argues that shot, although fired in a grossly negligent manner, was obviously not fired at K.N.'s car in violation of section 246.

We have already explained that other, more compelling, evidence established defendant fired at least one additional round at K.N.'s car on the highway that night. In light of this other evidence, most importantly, defendant's admission to having fired at K.N.'s car on Highway 193, we need not determine whether the testimony from Joseph and N.W. was substantial enough to warrant instruction on grossly negligent discharge in violation of section 246.3. Even assuming the trial court erred in failing to so instruct the jury, we conclude any such error was harmless.

"[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818 (*Watson*)]. A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant

---

**5**     Undesignated statutory references are to the Penal Code.

9

would have obtained a more favorable outcome had the error not occurred (*Watson*, *supra*, 46 Cal.2d 818, 836).” (*Breverman*, *supra*, 19 Cal.4th at p. 178, fn. omitted.) Under this standard, we “focus[] not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, [we] may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.” (*Id*. at p. 177.)

Without again recounting K.N.’s testimony and defendant’s statement to police following his arrest, we conclude this evidence was so strong, when compared to the testimony defendant relies on to support the theory he fired only one shot into his own thigh on Highway 193, there is no reasonable probability the jury would have convicted him of grossly negligent discharge rather than shooting at an occupied motor vehicle had it been instructed on that lesser offense. The assumed error is therefore harmless.

### III

### *Retroactivity of Senate Bill 1393*

We do agree with defendant’s assertion the matter must be remanded to the trial court for an exercise of discretion pursuant to Senate Bill 1393.

Defendant was sentenced in January 2018. The law at that time did not allow the trial court to strike a prior serious felony five-year enhancement under section 667, subdivision (a)(1). Senate Bill 1393 removed this prohibition effective January 1, 2019. (Stats. 2018, ch. 1013, §§ 1, 2.)

Relying on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), defendant argues these amendments apply to him because his judgment is not yet final. In *Estrada*, our Supreme Court stated: “When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is

10

an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Id*. at p. 745.) This includes "acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Ibid*.) Thus, under *Estrada*, absent evidence to the contrary, we presume the Legislature intended a statutory amendment reducing punishment to apply retroactively to cases not yet final on appeal. (*Id*. at pp. 747-748; *People v. Brown* (2012) 54 Cal.4th 314, 324.) Our Supreme Court has also applied the *Estrada* rule to amendments giving the trial court discretion to impose a lesser penalty. (*People v. Francis* (1969) 71 Cal.2d 66, 76.)

The Attorney General concedes the rule of *Estrada* requires retroactive application of Senate Bill 1393 to defendant's case, but argues remand is nevertheless unnecessary. As the Attorney General points out, we are not required to remand the matter to allow the trial court to exercise its discretion if "the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] enhancement." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) Moreover, the trial court need not have specifically stated at the original sentencing hearing that it would not have stricken the enhancement if it had the discretion to do so. Rather, we may infer what the trial court's intent would have been from its statements and sentencing decisions at the original sentencing hearing. (*People v. McVey* (2018) 24 Cal.App.5th 405, 419 ["In light of the trial court's express consideration of the factors in aggravation and mitigation, its pointed comments on the record, and its deliberate choice of the highest possible term for the firearm enhancement, there appears no possibility that, if the case were remanded, the trial court would exercise its discretion to strike the enhancement"]; see also *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 (*Gutierrez*) ["the trial court indicated that it would not, in any event, have exercised its discretion to lessen the sentence" and therefore "no purpose would be served in remanding for reconsideration"].)

11

The Attorney General argues remand is unnecessary "because the trial court's statements at sentencing and other sentencing choices clearly indicated that it would not have dismissed the prior serious felony enhancement in any event." We are not persuaded. We first note, as our colleagues at the Second Appellate District recently observed, "what a trial court might do on remand is not 'clearly indicated' by considering only the original sentence." (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110-1111.) In *Gutierrez*, in imposing the maximum possible sentence, the trial court "stated that imposing the maximum sentence was appropriate" in order to " 'keep [the defendant] off the street as long as possible.' " (*Gutierrez*, *supra*, 48 Cal.App.4th at p. 1896.) That clearly indicated the trial court would not have exercised its discretion in the defendant's favor.

Here, as the Attorney General points out, the trial court also imposed an "aggravated sentence" for defendant's conduct. In addition to the length of the sentence, the Attorney General relies on the following statements made by the trial court when denying defendant's motion to strike the prior serious felony conviction for purposes of the three strikes law under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*): "The crimes that were committed in this case were just too serious. We have two separate instances where the [d]efendant shot at an occupied vehicle. And, frankly, it could have resulted in death or serious injury not only to the alleged victim in this case but to a stander-by who could have been in the wrong place at the wrong time. [¶] . . . [¶] And based upon the severity of this case and the . . . nature of it and considering the [d]efendant's past record, I could not find that this was outside the spirit of the Three Strikes Law. I considered it. I considered it long and hard, but it certainly does seem to fit within the spirit of that law."

We cannot conclude these statements foreclose the possibility of an exercise of Senate Bill 1393 discretion in defendant's favor. This is because " 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but

12

establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "[T]he court in question must consider whether, in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

In denying defendant's *Romero* motion, the trial court highlighted the seriousness of defendant's conduct, but it did so in the context of concluding defendant did not clearly fall outside the spirit of the three strikes law. While a similar analysis should be employed in determining whether or not to strike a prior for purposes of the five-year enhancement, this is a separate inquiry from the *Romero* inquiry. It does not follow that a defendant who falls within the spirit of the three strikes law under *Romero* cannot nevertheless have the additional five-year enhancement term stricken in furtherance of justice under section 1385 following the passage of Senate Bill 1393. Under that section, the trial court may either "strike or dismiss" the enhancement "in furtherance of justice," or "instead strike the additional punishment for that enhancement in the furtherance of justice." (§ 1385, subds. (a), (b)(1).) The trial court has not made this determination. Nor do we believe the statements made by the trial court in denying defendant's *Romero* motion clearly indicate it will decline to strike either the enhancement or the additional punishment for that enhancement on remand.

13

**IV**

*Retroactivity of Senate Bill 136*

Finally, as the Attorney General concedes, we must also remand the matter to the trial court with directions to strike defendant's prior prison term enhancements because Senate Bill 136, which became effective January 1, 2020, and eliminates such enhancements for defendant's crimes, also applies retroactively to cases not yet final on appeal.

Effective January 1, 2020, Senate Bill 136 amended section 667.5, subdivision (b), to remove the one-year enhancement for prior prison terms, except when the offense underlying the prior prison term was a sexually violent offense. (See § 667.5, subd. (b).) Because Senate Bill 136 reduces sentences for a crime it applies retroactively to convictions not final on appeal absent evidence of a contrary legislative intent. (See *People v. Brown*, *supra*, 54 Cal.4th at pp. 323-324; *Estrada*, *supra*, 63 Cal.2d at p. 745.) Senate Bill 136 therefore applies to this case.

The offenses underlying defendant's prior prison terms were not sexually violent offenses. Accordingly, the prior prison term enhancements cannot stand. Defendant asks us to remand the matter to the trial court with directions to strike the enhancements. We shall do so. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].)

DISPOSITION

The judgment of conviction entered against defendant is affirmed and the matter is remanded to the trial court for a new sentencing hearing, during which the trial court shall: (1) exercise its sentencing discretion in determining whether or not to strike the prior serious felony conviction for purposes of imposing the previously mandatory five-

14

year enhancement under Penal Code section 667, subdivision (a); and (2) strike the prior prison term enhancements imposed under Penal Code section 667.5, subdivision (b).

/s/
HOCH, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
KRAUSE, J.